**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| KEITH WELLIN, | ) | No. 2:13-cv-1831-DCN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PETER J. WELLIN, *et. al.,* | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| LESTER S. SCHWARTZ, *as Trust Protector* | ) | |
| *of the Wellin Family 2009 Irrevocable Trust,* | ) | |
| | ) | No. 2:13-cv-3595-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PETER J. WELLIN, *et. al.,* | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| KEITH WELLIN, | ) | No. 2:14-cv-0579-DCN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PETER J. WELLIN, *et. al.,* | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| EDWARD G. R. BENNETT, *as Special* | ) | |
| *Conservator*, and KEITH WELLIN, | ) | |
| | ) | No. 2:14-cv-0652-DCN |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PETER J. WELLIN, *et. al.,* | ) | |
| | ) | **ORDER** |
| Defendants. | ) | |

1

These matters are before the court on ten motions: six discovery motions filed in Wellin v. Wellin ("Wellin I"), Docket No. 13-cv-1831, and Schwartz v. Wellin ("Schwartz"), Docket No. 13-cv-3595; one discovery motion filed only in Wellin I; a motion in limine filed in Wellin I and Schwartz; a motion to dismiss filed in Wellin v. Wellin ("Wellin II"), Docket No. 14-cv-0579; and a motion to dismiss filed in Wellin v. Wellin ("Wellin III"), Docket No. 14-cv-0652. For the reasons stated below, the court:

- Grants in part and denies in part three motions to compel, Wellin I ECF Nos. 115, 116, and 126 and Schwartz ECF Nos. 45, 51, and 59;

- Denies one motion to compel, Wellin I ECF No. 117 and Schwartz ECF No. 49;

- Denies the two motions to quash subpoenas, Wellin I ECF Nos. 124 and 125 and Schwartz ECF Nos. 57 and 58;

- Grants the motion in limine, Wellin I ECF No. 127 and Schwartz ECF No. 60;

- Grants in part and denies in part the motion for protective order, Wellin I ECF No. 128 and Schwartz ECF No. 63; and

- Grants both motions to dismiss, Wellin II ECF No. 6 and Wellin III ECF No. 9.

## I.  BACKGROUND

Because the parties are well-acquainted with the extensive history that undergirds these cases, the court recites only the facts and procedure relevant to the disposition of the motions at hand.[1] Where appropriate, the court construes the facts in the light most favorable to the non-moving party.

---

[1] As of the date of this order, a gracious plenty of new motions have been filed in Wellin I and Schwartz. These motions are not yet ripe and are not addressed herein.

## A. Factual History

The facts of this case are largely undisputed, though the parties' interpretations thereof diverge. Keith Wellin ("Keith") is an eighty-seven year-old man who, over his life, has amassed a fortune worth hundreds of millions of dollars. Keith is married to his fourth wife, Wendy Wellin ("Wendy"), and has three adult children from his first marriage. Keith's children are Peter J. Wellin ("Peter"), Cynthia Wellin Plum ("Ceth"), and Marjorie W. King ("Mari").[2]

Friendship Management, LLC is a Delaware limited liability company formed on December 8, 2003. The members of Friendship Management are The 2003 KSW Family Trust (40%), Peter (20%), Ceth (20%), and Mari (20%). Ceth is the sole manager of Friendship Management.

Friendship Partners, LP was a Delaware limited partnership formed on December 12, 2003. Upon the partnership's formation, Keith transferred 896 Class A Berkshire Hathaway common shares to Friendship Partners. At the time it was formed, Keith was the limited partner of Friendship Partners and owned 98.9% of the partnership. Friendship Management was the general partner of Friendship Partners and owned 1.1% of the partnership. As general partner, Friendship Management controlled Friendship Partners, even though Keith owned most of the partnership.

On November 30, 2009, Keith sold his 98.9% interest in Friendship Partners to the Wellin Family 2009 Irrevocable Trust ("the November 2009 Transaction"). Peter, Ceth, and Mari are co-trustees for the Wellin Family 2009 Irrevocable Trust ("the Trust"), and South Dakota Trust Company was the Trust's original corporate trustee.

---

[2] The court refers to Peter, Ceth, and Mari collectively as "the Wellin children."

3

Thomas Farace ("Farace"), Keith's long-time estate attorney, was the Trust's trust protector.  In exchange for Keith's interest in Friendship Partners, the Trust issued to Keith a note with a face value of $49,802,115 ("the Note").  The Note accrues interest.

In January 2013, Keith made $10 million gifts to each of his children ("the 2013 Gifts").  At the same time, Keith also gave $10 million to Wendy.

On November 20, 2013, Keith substituted the Note for a 58% interest in Friendship Partners ("the 2013 Swap").  Also on November 20, 2013, Keith removed Farace as the Trust's trust protector and installed attorney Lester A. Schwartz ("Schwartz") in that role.  On the same day, Schwartz notified all of the trustees that he was unilaterally making a number of changes to the Trust's governing document pursuant to his power as trust protector.  Schwartz also removed South Dakota Trust Company as the Trust's corporate trustee and appointed Brown Brothers Harriman Trust Company of Delaware, N.A. ("Brown Brothers") as corporate trustee.

On December 1, 2013, Ceth, as the sole manager of Friendship Management, directed the liquidation of Friendship Partners, based upon the written consent of all three Wellin children.

On December 5, 2013, Brown Brothers resigned its position as the Trust's newly-installed corporate trustee.  Schwartz has not accepted Brown Brothers' resignation.[3]

On December 6, 2013, Friendship Partners sold all its assets, including the Berkshire Hathaway shares that Keith Wellin had contributed to Friendship Partners.  About $95 million was distributed equally to Peter, Ceth, and Mari.  The remaining $50

---

[3] The parties dispute the validity of the 2013 Swap, Schwartz's appointment as trust protector, the actions that Schwartz has taken since his appointment, and Brown Brothers' appointment and resignation.

million was sent, in form of a check, to Keith's counsel in payment of the Note.  Keith's attorneys returned the check on the same day.

### B. Procedural History

There are four separate cases currently pending before the court that relate to Keith's disputes with his children.

#### 1.  <u>Wellin I</u>

On July 3, 2013, Keith filed a complaint against Peter, Ceth, Mari, Friendship Management, Friendship Partners, and South Dakota Trust Company.  After the court granted in part and denied in part two motions for judgment on the pleadings, Keith filed an amended complaint on February 28, 2014 against Peter, Ceth, Mari, and Friendship Management.  The gist of the <u>Wellin I</u> amended complaint is that defendants[4] cheated Keith by orchestrating the November 2009 Transaction, by duping him into making the 2013 Gifts, and by failing to pay him 58% of the value of Friendship Partners after the partnership was liquidated.  The <u>Wellin I</u> amended complaint asserts the following seventeen causes of action:

(i)    A declaratory judgment that: (a) Farace was properly removed as trust protector of the Trust and Schwartz was properly named as his replacement on November 20, 2013; and (b) the amendments Schwartz made to the Trust on November 20, 2013 are all valid and now control the Trust;

(ii)   Breach of fiduciary duty (as to Peter and Ceth);

(iii)  Aiding and abetting breach of fiduciary duty (as to Ceth and Mari);

(iv)   Fraud (as to Peter);

(v)    Constructive fraud (as to Peter);

---

[4] The court uses "defendants" when referring to Peter, Ceth, Mari, and Friendship Management, the defendants in <u>Wellin I</u> and <u>Schwartz</u>.

(vi)     Fraudulent concealment (as to Peter);

(vii)    Negligent misrepresentation (as to Peter);

(viii)   Breach of contract (as to Peter);

(ix)     Breach of contract accompanied by fraudulent act (as to Peter);

(x)      Violation of the South Carolina Uniform Securities Act (as to Peter, individually and as co-trustee of the Wellin Family 2009 Irrevocable Trust);

(xi)     Unjust enrichment (as to all defendants);

(xii)    Constructive trust (as to all defendants);

(xiii)   Breach of fiduciary duty (as to all defendants);

(xiv)    Aiding and abetting breach of fiduciary duty (as to Peter and Mari);

(xv)     Breach of the Friendship Partners, LP agreement (as to Peter, Ceth, and Mari);[5]

(xvi)    Civil conspiracy (as to Peter, Ceth, and Mari); and

(xvii)   Breach of covenant of good faith and fair dealing (as to all defendants).

Notably, the eleventh cause of action alleges that defendants unjustly enriched themselves by "obtain[ing] and wrongfully with[holding] proceeds owed to Plaintiff arising out of the liquidation of Friendship Partners, LP." Wellin I Am. Compl. ¶ 220.

### 2. Schwartz

On December 17, 2013, Schwartz, in his capacity as trust protector, filed a complaint in Charleston County Probate Court against Keith, Peter, Ceth, Mari, Friendship Management, and Friendship Partners. Peter, Ceth, Mari, Friendship Management, and Friendship Partners removed the case to this court on December 27,

---

[5] The subheading of the fifteenth cause of action states that this claim has been brought against Peter, Ceth, Mari, and Friendship Partners. The court assumes that this subheading is incorrect because Friendship Partners is not named as a defendant in the Wellin I amended complaint.

6

2013.  Schwartz dismissed his claims against Keith and Friendship Partners on January 3, 2014.  On January 17, 2014, defendants answered the complaint and asserted two counterclaims against Keith and Schwartz.  Through these counterclaims, defendants seek declarations that:  (i) Schwartz's appointment as trust protector was invalid; and (ii) any amendments to the Trust that Schwartz has made are therefore also invalid.  On April 21, 2014, Keith filed a counterclaim seeking the removal of Peter, Ceth, and Mari as trustees of the Trust.

On April 17, 2014, the court issued an order finding that Schwartz must be dismissed from this case because he is not a real party in interest.  On May 2, 2014, Schwartz and proposed additional plaintiff Larry S. McDevitt ("McDevitt") submitted a proposed amended complaint that asserts substantially the same claims as those asserted in the original complaint.  The proposed amended Schwartz complaint asserts that the Wellin children have frustrated the intent and purposes of the Trust, which was to provide for Keith's lineal descendants, by liquidating Friendship Partners' assets and putting $95 million of the proceeds into their own bank accounts, leaving about $50 million to pay the Note.  The proposed amended Schwartz complaint asserts six causes of action against defendants.  Wellin I and Schwartz have been consolidated for purposes of pretrial discovery.

On March 21, 2014, defendants moved to compel Wendy to respond fully and completely to their February 2014 subpoena for documents and to produce a privilege log for any documents withheld on the basis of privilege.  Wendy opposed the motion to compel on April 7, 2014.

On March 26, 2014, Keith filed a motion to compel his children's responses to his first requests for production. Defendants opposed the motion on April 14, 2014.

Also on March 26, defendants filed a motion to compel third-party Heather Lane ("Heather") to comply with their February 2014 subpoena. Heather opposed the motion on April 7, 2014.

On April 7, 2014, Wendy filed two motions to quash subpoenas issued to UBS Financial Services, Inc. and to UBS employee Brian McLoughlin insofar as those subpoenas relate to information about Wendy. Defendants opposed the motions on April 24, 2014.

On April 10, 2014, defendants filed a motion in limine to exclude portions of Keith's video deposition from trial. Keith opposed the motion on April 21, 2014.

On April 11, 2014, defendants moved for an order protecting Drs. Larry Tune and Laurie Culp from being deposed by Keith prior to defendants' expert disclosure deadline. Keith opposed the motion on April 21, 2014. Defendants replied on April 25, 2014.

### 3. <u>Wellin II</u>

On February 28, 2014, Keith filed a second complaint in this court against his three children. This complaint names Peter, Ceth, and Mari in their individual capacities as well as in their capacities as trustees for the Trust. Keith alleges that his children have refused to surrender $50,211,447.00 owed to him as a result of the 2013 Swap and the subsequent liquidation of Friendship Partners. <u>Wellin II</u> Compl. ¶¶ 14-16. In <u>Wellin II</u>, Keith asserts a single claim for conversion against Peter, Ceth, and Mari.

On March 24, 2014, the Wellin children moved to dismiss this case on the basis that it violates the rule against claim splitting.  On April 10, 2014, Keith opposed the motion.  Peter, Ceth, and Mari replied to Keith's opposition on April 21, 2014.

### 4.  Wellin III

On February 24, 2014, Keith and attorney Edward Bennett ("Bennett"), as Keith's special conservator, brought suit in Charleston County probate court against Peter, Ceth, and Mari.  The Wellin III complaint alleges that Keith's children have failed to pay Keith about $91 million, which Keith alleges is the value of the 58% interest in Friendship Partners for which Keith swapped the Note.  Wellin III Compl. ¶¶ 6-12.  This complaint asks the court to:  (i) find that Keith swapped the Note for a 58% interest in Friendship Partners on November 20, 2013; (ii) determine the value of the 58% interest in Friendship Partners; and (iii) order Peter, Ceth, and Mari to pay Keith or Bennett the amounts owed to Keith as a result of Friendship Partner's liquidation, plus interest.  Id. ¶¶ A-C.

On March 3, 2014, the Wellin children removed Wellin III to this court.  On March 24, 2014, they moved to dismiss this case on the basis that it violates the rule against claim splitting.  Bennett and Keith opposed the motion on April 10, 2014.  Peter, Ceth, and Mari filed a reply on April 21, 2014.

The ten motions described above have been fully briefed and are ripe for the court's review.  In addition, the court has had the benefit of oral arguments presented by the parties at a hearing held on May 13, 2014.

9

## II.  STANDARDS

### A.  Motions to Compel Discovery

The Federal Rules of Civil Procedure provide that a party may "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons who know of any discoverable matters."  Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Id.  Rather, information is relevant and discoverable if it relates to "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

If a party declines to answer an interrogatory or request for production, the serving party "may move for an order compelling an answer, designation, production, or inspection."  Fed. R. Civ. P. 37(a)(3)(B).  An evasive or incomplete disclosure, answer, or response, "must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).  "The scope and conduct of discovery are within the sound discretion of the district court."  Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Research, Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)).

### B.  Motions to Compel Compliance with or to Quash Subpoena

Under Rule 45 of the Federal Rules of Civil Procedure, a "command in a subpoena to produce documents . . . requires the responding person to permit inspection,

10

copying, testing, or sampling of the materials." Fed. R. Civ. P. 45(a)(1)(D). If the person commanded to produce documents makes a timely written objection, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). If the court orders compliance with the subpoena, production "may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). Moreover,

> A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

Fed. R. Civ. P. 45(e)(2)(A). A court may, on timely motion, quash or modify a subpoena that subjects a person to undue burden or requires disclosure of privileged or other protected matter. Fed. R. Civ. P. 45(d)(3)(A). "[T]he scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." HDSherer LLC v. Natural Molecular Testing Corp., 292 F.R.D. 305, 308 (D.S.C. 2013).

### C. Motion for Protective Order

The court has authority upon motion of a party and for good cause shown to limit discovery when "the discovery sought is unreasonably cumulative or duplicative" or "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(i), (iii); Nicholas v. Wyndham Int'l, Inc., 373 F.3d 537, 543 (4th Cir. 2004).

### D. Motions to Dismiss

"As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000) (citing Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation.")). There is a long history of American courts precluding duplicative litigation under certain circumstances. More than 120 years ago, the Supreme Court explained that:

> When the pendency of such a suit is set up to defeat another, the case must be the same. There must be the same parties, or, at least, such as represent the same interests; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the title, or essential basis, of the relief sought must be the same.

The Haytian Republic, 154 U.S. 118, 124 (1894).

### III.   DISCUSSION

The court addresses the motions pending in Wellin I and Schwartz before turning to the motions to dismiss Wellin II and Wellin III.

### A. Defendants' Motion to Compel Wendy to Comply with Subpoena, Wellin I ECF No. 115 and Schwartz ECF No. 45

Defendants first seek an order compelling Wendy to comply with a subpoena issued on February 10, 2014. Among other things, defendants ask Wendy to provide all records relating to her and Keith's finances since 2003, including records relating to their living expenses, charitable donations, gifts, real estate purchases, or other asset transfers they have made or contemplated; all documents relating to legal and estate planning advice that they have requested or received, including correspondence with Keith's attorneys and accountants; and all correspondence with any third party – including

12

Keith's lawyers, UBS, and the Trust's corporate trustees – regarding the pending litigation and the issues raised therein, including the estate planning steps that Keith has taken since the litigation began.  Defendants also ask Wendy to provide her cell phone for inspection.  Wendy objects that the subpoena's production requests are overly broad, unduly burdensome, and unrelated to this litigation and that many responsive documents are subject to spousal or attorney-client privilege.

The claims asserted in Wellin I and Schwartz place Keith's present and past financial status and competence squarely at issue.  Any asset transfers that Keith may have made to Wendy, and Keith and Wendy's joint financial status, are clearly relevant.  The state of Wendy's finances also may tend to prove or disprove some elements of the claims and defenses asserted.  In addition, the amount of control that Wendy may or may not exert over Keith's health care, finances, and estate planning may be relevant to the determination of Keith's capacity, which is at issue in this case.

Nevertheless, defendants' subpoena paints with too broad a brush.  As a result, the court grants in part and denies in part defendants' motion to compel.  Wendy is directed to respond fully to Requests 3, 7, 12, and 13.  Wendy is further directed to respond to Requests 15 and 26 to the extent those requests seek documents and correspondence related to her own finances or her and Keith's joint finances.  Wendy need not produce documents or correspondence that relate solely to Keith's finances.  Wendy is also directed to respond to Requests 6, 8, 10, 19, 22, and 23 – questions for which she has asserted marital and/or attorney-client privilege – by producing all non-privileged documents as well as a privilege log.  Because the court finds that Requests 1, 2, 4, 9, 11, 16, 17, and 28 are not reasonably calculated to lead to the discovery of admissible

evidence, Wendy need not respond to these questions.  Wendy has produced documents responsive to Request 14 and defendants have not objected to the completeness of that production.  Wendy need not respond further to Request 14.  Finally, Wendy stated that she has no documents responsive to Requests 5, 18, 20, 21, 24, 25, and 27.  She need not respond further to these requests.

### B.  Keith's Motion to Compel Responses to Requests for Production, <u>Wellin I</u> ECF No. 116 and <u>Schwartz</u> ECF No. 51

Keith asks the court to require Peter, Ceth, and Mari to respond to several requests for production issued on February 4, 2014.  Among other things, these requests for production seek employment records, tax returns, and all financial and real estate records for the Wellin children.  At issue are Requests 3, 6, 9, 10, 18, 19, 28, and 29.  Keith contends that the requested documents must be disclosed because:  (i) they will be relevant in ascertaining the amount of damages; (ii) they may reflect on any financial motives that Peter, Ceth, and Mari may have had to take the actions alleged in <u>Wellin I</u>'s amended complaint; (iii) they may demonstrate "whether the 2009 transaction and the 2013 gifts were something out of the ordinary;" and (iv) Keith has, under the guarantee agreement associated with the November 2009 Transaction, the right to "request from each of his children information related to their net worth."  Pl.'s Mot. 4-5.  The Wellin children respond that these requests are not reasonably calculated to lead to the discovery of admissible evidence.

As with Wendy's financial status, the Wellin children's financial status may bear on some of the claims and defenses set forth in these cases.  For all of the reasons that defendants may obtain information regarding Wendy's finances, it is appropriate to allow Keith to take similar discovery from his children.

14

In light of the foregoing, the court grants in part and denies in part Keith's motion to compel. Peter, Ceth, and Mari are directed to respond fully to Requests 3, 6, and 28. They are also directed to respond to Requests 10 and 18 by providing all responsive documents created within the past eight years. Because the court finds that Requests 9, 19, and 29 are not reasonably calculated to lead to the discovery of admissible evidence, the Wellin children need not respond to those document requests.

### C. Defendants' Motion to Compel Heather to Comply with Subpoena, Wellin I ECF No. 117 and Schwartz ECF No. 49

Defendants also ask the court to compel Heather's compliance with a subpoena issued on February 10, 2014. Heather, Wendy's daughter, lives with Wendy and Keith. Heather answered the subpoena by stating that she had no responsive documents for fifteen of the seventeen document requests. She objected to Request 17, which asked her to produce her mobile phone for inspection. She responded to Request 6, regarding assets transferred to her by Keith and Wendy, by stating that Keith and Wendy gave her $26,000.00 per year for several years prior to 2013 and that she received $14,000.00 from each of them in 2013. Defendants now ask the court to order Heather to produce her mobile phone for inspection and to produce all documents related to the transactions she described in her response to Request 6.

Defendants have failed to articulate how Heather's response to Request 6 is insufficient. In light of the fact that Heather has already stated that she has no text messages or emails responsive to defendants' other document requests, inspection of Heather's cell phone appears to be nothing more than an impermissible fishing expedition. For these reasons, the court denies the motion to compel.

15

### D. Wendy's Motions to Quash Subpoenas, <u>Wellin I</u> ECF Nos. 124-125 and <u>Schwartz</u> ECF Nos. 57-58

On March 10, 2014, defendants issued identical subpoenas to UBS Financial Services, Inc. and to UBS employee Brian McLoughlin. These subpoenas sought all emails, correspondence, and documents relating to Keith and Wendy's finances. In two identical motions, Wendy asks the court to quash the portions of these subpoenas insofar as they seek the "production of any document related to Wendy Wellin." Mots. Quash at 2. Wendy argues that all of the subpoenaed materials are irrelevant to this case because she is not a party to this action. Defendants respond that the assets that Keith has transferred to Wendy are highly relevant to this litigation because Keith has alleged that the November 2009 Transaction and 2013 Gifts have driven him to a financial precipice.

The test of discoverability is not whether a person is a party to a case. As described in section III.A, Wendy's financial status bears importantly on this case. The court denies these two motions to quash.

### E. Defendants' Motion to Compel Keith to Produce Discovery, <u>Wellin I</u> ECF No. 126 and <u>Schwartz</u> ECF No. 59

Next, defendants ask the court to compel Keith, pursuant to defendants' first set of requests for production, to "produce all documents, including letters and emails, evidencing or otherwise relating to correspondence between [Keith] and Tom Farace or anyone else at Nixon Peabody since January of 2003 regarding [Keith's] estate planning . . . ." Defs.' Mot. Compel Ex. A at 14, <u>Wellin I</u> ECF No. 126.

Until sometime in 2013, Farace handled all of Keith's estate planning. After that relationship ended, Nixon Peabody sent Keith their legal file for his estate plans. It is this file, as well as all communications that Keith had with Farace, (collectively, "the Farace

16

file") that defendants seek.  Keith asserts that the Farace file is subject to attorney-client privilege, but has not produced a privilege log.  Defendants respond that Keith has waived privilege over the entire Farace file because he has placed the advice contained therein at issue in these cases.

Without delving into the parties' substantive arguments, it is clear that the all-or-nothing approach espoused by each party is not the appropriate path forward.  Defendants have requested documents over which Keith has asserted claims of privilege.  Under Federal Rule of Civil Procedure 26(b)(1) and (5), Keith must now produce all non-privileged material contained in the Farace file as well as a log detailing all material over which he expressly asserts privilege.[6]  After Keith has produced all non-privileged material and a privilege log, defendants may challenge Keith's assertions of privilege on a particularized basis.

In short, the court grants in part and denies in part defendants' motion to compel Keith to produce the Farace file.  Keith is directed to produce all non-privileged material contained in the Farace file as well as a privilege log.

### F.  Defendants' Motion in Limine, Wellin I ECF No. 127 and Schwartz ECF No. 60

Defendants next ask the court to exclude certain portions of Keith's testimony from trial.  On February 4, 2014, the court granted Keith's motion for an expedited video deposition in order to preserve Keith's testimony for trial.  Keith was deposed on February 7, 2014.  Defendants contend that Keith's counsel asked him a number of

---

[6] As discussed during the hearing, at least some of the material contained in the Farace file may not be privileged – or any privilege may have been waived – on the basis that Keith shared that material with third parties.

impermissibly leading questions and argue that those portions of Keith's deposition should be excluded from trial.

Rule 611 of the Federal Rules of Evidence states that "Leading questions should not be used on direct examination except as necessary to develop the witness's testimony." Fed. R. Evid. 611(c). "The essential test of a leading question is whether it so suggests to the witness the specific tenor of the reply desired by counsel that such a reply is likely to be given irrespective of an actual memory." United States v. Durham, 319 F.2d 590, 592 (4th Cir. 1963).

Even taking into account Keith's language difficulties, it is clear that Keith's attorney asked a number of leading questions that were inappropriate on direct examination. These questions and Keith's responses thereto would be inadmissible at trial. For this reason, the court grants the motion in limine and will exclude portions of Keith's video deposition from trial. Those portions are highlighted in a copy of the deposition transcript attached to this order as **Exhibit A**.

Because portions of Keith's deposition are inadmissible, the court will allow counsel to re-depose Keith under the same conditions that governed his first video deposition. Keith's second video deposition, if his counsel chooses to take it, shall take place at Keith's home on a date and time mutually agreed upon by the parties. Plaintiff's counsel will have thirty minutes to depose Keith, after which Keith will be allowed to rest for some period of time. After Keith has rested, but also on the same day, defendants' counsel will have thirty minutes to cross-examine Keith. Because she is not a party in this case, Wendy will not be present in the home during Keith's deposition, rest period, and cross-examination. Because they are defendants in this case, Peter, Ceth, and Mari

may choose to attend Keith's deposition in person or via telephone. The video cameras installed in the home will be turned off for the duration of Keith's deposition, including the rest period and the cross-examination. This order and the deposition it authorizes do not preclude defendants from deposing Keith at another time in the future.

### G. Defendants' Motion for Protective Order, Wellin I ECF No. 128 and Schwartz ECF No. 63

Defendants also move for a protective order that will prevent Drs. Larry Tune and Laurie Culp from appearing at depositions before they have been identified by defendants as testifying expert witnesses. Defendants argue that Drs. Tune and Culp are consulting expert witnesses and, as such, may not be deposed until they are identified as likely to testify at trial. Keith responds that deposing Drs. Tune and Culp is proper now because they have already conducted court-ordered mental examinations on Keith pursuant to Rule 35 of the Federal Rules of Civil Procedure.

For the reasons stated in open court on May 13, 2014, the court grants in part and denies in part defendants' motion for a protective order. The court grants the motion insofar as it relates to Dr. Culp. Dr. Culp may not be deposed by Keith unless and until defendants designate her as a testifying witness. The court denies the motion insofar as it relates to Dr. Tune. If he so chooses, Keith may depose Dr. Tune before defendants' July 2014 expert disclosure deadline. The court notes, however, that Keith will only be permitted to depose Dr. Tune once, barring compelling reasons to the contrary. The court also directs defendants to provide Keith with copies of Dr. Culp's and Dr. Tune's Rule 35 examination reports by June 13, 2014 at 5:00 p.m.

19

### H. Defendants' Motions to Dismiss, <u>Wellin II</u> ECF No. 6 and <u>Wellin III</u> ECF No. 9

Peter, Ceth, and Mari have moved to dismiss <u>Wellin II</u> and <u>Wellin III</u> on the basis that those cases violate the rule against claim splitting. Specifically, the Wellin children argue that <u>Wellin II</u> and <u>Wellin III</u> must be dismissed because they arise out of the same core of operative facts and concern the same parties as <u>Wellin I</u>.

"The rule against claim splitting is one of the principles of res judicata," also known as claim preclusion. <u>Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.</u>, 273 F. App'x 256, 264 (4th Cir. 2008) (citing <u>Nash Cnty. Bd. of Educ. v. Biltmore Co.</u>, 640 F.2d 484, 490 (4th Cir. 1981)). Specifically, the rule "prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." <u>Id.</u> at 265 (quotations omitted). Under this rule, a first lawsuit will bar a second lawsuit when there is: (i) "an identity of the cause of action in both the earlier and the later suit; and [(ii)] an identity of parties or their privies in the two suits." <u>Pueschel v. United States</u>, 369 F.3d 345, 354-55 (4th Cir. 2004).

#### 1. Identity of causes of action

Peter, Ceth, and Mari first assert that <u>Wellin II</u> and <u>Wellin III</u> must be dismissed because the claims asserted therein arise out of the same transactions and core of operative facts that are addressed in <u>Wellin I</u>.

The claims asserted in the lawsuits in question need not be identical for the rule against claim splitting to apply. <u>Id.</u> at 355. Rather, "an identity of the cause of action" means that both causes of action must "arise out of the same transaction or series of transactions or the same core of operative facts." <u>Id.</u> (quoting <u>In re Varat Enters., Inc.</u>, 81 F.3d 1310, 1316 (4th Cir. 1996)). "Among the factors to be considered in deciding

20

whether the facts of the current and prior claims are so woven together that they constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." Pittston Co. v. United States, 199 F.3d 694, 704 (4th Cir. 1999).

All three complaints provide a factual narrative that includes the 2013 Swap and subsequent liquidation of Friendship Partners. Wellin I Am. Compl. ¶¶ 104-122; Wellin II Compl. ¶¶ 14-17; Wellin III Compl. ¶¶ 6-12. In all three complaints, Keith seeks relief on the basis that his children have improperly withheld money owed to him as a result of the 2013 Swap and subsequent liquidation of Friendship Partners. Wellin I Am. Compl. ¶ 220; Wellin II Compl. ¶ 19; Wellin III Compl. ¶¶ 18, B. These are precisely the sort of duplicative claims that the rule against claim splitting is designed to prevent.[7] See Pueschel, 369 F.3d at 355 (holding that a plaintiff's Federal Tort Claims Act suit against her government employer was barred because she had previously filed a Title VII lawsuit that sought relief for the same pattern of conduct). In short, there is identity between the causes of action asserted in Wellin II and Wellin III and the eleventh cause of action in Wellin I.

### 2. Identity of parties or their privies

Peter, Ceth, and Mari next assert that the parties in all three cases are sufficiently identical such that dismissal of Wellin II and Wellin III would be appropriate.

---

[7] The fact that Wellin III would have been subject to the jurisdictional limitations of Charleston County probate court had it remained there does not affect the court's decision. First, Wellin I, the first Wellin case filed in federal court, is not subject to the jurisdictional limitations of state probate court. As a result, Keith was able to seek, through Wellin I, the full panoply of relief that may be available to him under the law. Second, Wellin III has been removed to federal court and removal has not been challenged. As a result, this case is distinguishable from Wathan v. Pazin, No. 07-cv-0874-AWI, 2007 WL 4181716 (E.D. Cal. Nov. 21, 2007), in which a California district court remanded a case to state court, allowing duplicative claims to proceed in parallel state and federal proceedings.

In addition to identity of claims, the rule against claim splitting requires the "identity of parties or their privies."  Pueschel, 369 F.3d at 355.  "To be in privity with a party to a former litigation, the non-party must be so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved."  Martin v. Am. Bancorporation Ret. Plan, 407 F.3d 643, 651 (4th Cir. 2005).

Keith does not argue – and he could not credibly do so – that the parties in Wellin I and Wellin II are anything other than identical.  What remains to be considered is whether there is identity of the parties in Wellin I and Wellin III.

In Wellin I, Keith appears both in his individual capacity as well as in his capacity as a trustee of the Keith S. Wellin Florida Revocable Living Trust.  Peter, Ceth, and Mari are named as defendants in their individual capacities as well as in their capacities as trustees and beneficiaries of the Trust.  In Wellin III, Keith and Bennett have sued Peter, Ceth, and Mari.  Bennett admits that "as Special Conservator for Mr. Wellin appointed by the Probate Court, [he] is in privity with Mr. Wellin," but asserts that this admission does not end the inquiry.  Wellin III Pls.' Opp'n Mot. Dismiss 6.

Though Bennett protests to the contrary, his admission is conclusive.  A privy is "[a] person having a legal interest of privity in any action, matter, or property; a person who is in privity with another."  Black's Law Dictionary (9th ed. 2009).  In the context of litigation, the term "privy" "includes someone who controls a lawsuit though not a party to it [as well as] someone whose interests are represented by a party to the lawsuit."  Id. Because Bennett admits that he is in privity with Keith, he is Keith's privy.  Put another way, Bennett's only legal rights and interests in Wellin III are those that he asserts on

Keith's behalf.[8]  As a result, there is identity of parties in <u>Wellin I</u>, <u>Wellin II</u>, and <u>Wellin III</u> for purposes of the rule against claim-splitting.

Because there is identity of both claims and parties in <u>Wellin I</u>, <u>Wellin II</u>, and <u>Wellin III</u>, the court finds that <u>Wellin II</u> and <u>Wellin III</u> violate the rule against claim splitting.  Keith can seek – and, indeed, already has sought – relief for his children's alleged wrongs through <u>Wellin I</u>.  If Keith wishes to pursue additional claims against his children on the basis of the November 2009 Transaction, the 2013 Gifts, the 2013 Swap, or the alleged conversion of $50,211,447.00, he should seek to further amend the <u>Wellin I</u> complaint.  To allow <u>Wellin II</u> and <u>Wellin III</u> to proceed would waste the parties' time and money as well as precious judicial resources.

### III.   CONCLUSION

In light of the foregoing, the court:

1.  **GRANTS IN PART AND DENIES IN PART** defendants' motion to compel Wendy to comply with their subpoena, <u>Wellin I</u> ECF No. 115 and <u>Schwartz</u> ECF No. 45;

2.  **GRANTS IN PART AND DENIES IN PART** Keith's motion to compel, <u>Wellin I</u> ECF No. 116 and Schwartz ECF No. 51;

3.  **DENIES** defendants' motion to compel Heather to comply with their subpoena, <u>Wellin I</u> ECF No. 117 and <u>Schwartz</u> ECF No. 49;

4.  **DENIES** Wendy's motion to quash the subpoena issued to UBS Financial Services, Inc., <u>Wellin I</u> ECF No. 124 and <u>Schwartz</u> ECF No. 57;

---

[8] At the hearing held on May 13, 2014, Bennett's counsel noted that the position of "special conservator" is not one recognized by South Carolina law.  She explained that the state probate judge created the position for Bennett as a means of brokering a compromise between the parties, who dispute whether Keith is capable of managing his affairs.  Counsel's admission underscores the finding that the parties in these cases are identical.  Because Bennett appears on Keith's behalf in a role not recognized by the law, it is unlikely that Bennett would be able to demonstrate that he has standing to assert his claim.

5. **DENIES** Wendy's motion to quash the subpoena issued to Brian McLoughlin, <u>Wellin I</u> ECF No. 125 and <u>Schwartz</u> ECF No. 58;

6. **GRANTS IN PART AND DENIES IN PART** defendants' motion to compel Keith to produce the Farace file, <u>Wellin I</u> ECF No. 126 and <u>Schwartz</u> ECF No. 59;

7. **GRANTS** defendants' motion <u>in limine</u>, <u>Wellin I</u> ECF No. 127 and <u>Schwartz</u> ECF No. 60;

8. **GRANTS IN PART AND DENIES IN PART** defendants' motion for protective order, <u>Wellin I</u> ECF No. 128 and <u>Schwartz</u> ECF No. 63;

9. **GRANTS** the Wellin children's motion to dismiss, <u>Wellin II</u> ECF No. 6; and

10. **GRANTS** the Wellin children's motion to dismiss, <u>Wellin III</u> ECF No. 9.

The court **DISMISSES** without prejudice <u>Wellin v. Wellin</u>, Docket No. 14-cv-00579, and <u>Wellin v. Wellin</u>, Docket No. 14-cv-00652.  The court **WILL EXCLUDE** from trial the portions of Keith's February 7, 2014 video deposition that are highlighted in the deposition transcript copy attached hereto as **<u>Exhibit A</u>**.  Defendants are **DIRECTED** to provide Keith with Dr. Tune's and Dr. Culp's Rule 35 medical reports by Friday, June 13, 2014 at 5:00 p.m.

      **AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 28, 2014**
**Charleston, South Carolina**